UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>     Plaintiff,<br><br> vs.<br><br>MILENDER WHITE CONSTRUCTION; MW REAL ESTATE, LLC; U.S. FACILITIES, LLC; and MW SELFWORK, LLC,<br><br>     Defendants. | CIV. 15-5004-JLV<br><br>ORDER |

  This case began as a lawsuit Double H Masonry, Inc., ("Double H") brought against Liberty Mutual Insurance Company ("Liberty") and Lockton Companies, LLC, ("Lockton"). (Docket 1). As the case progressed, Lockton was removed from the dispute and Liberty filed a third-party complaint naming Milender White Construction Company, MW Real Estate LLC, U.S. Facilities Management LLC and MW Selfwork LLC.[1] (Dockets 28, 29 & 112). Double H and Liberty settled their claims, leaving Liberty and MWCC as the lone parties. (Dockets 176 & 177). Pending before the court is Liberty's summary judgment motion and MWCC's summary judgment motion and motion to transfer the case to a different jurisdiction. (Dockets 168, 169 & 174).

---

[1]The court refers to these defendants collectively as "MWCC." In some of the case's factual background, the court refers to Milender White Construction Company as "Milender White."

**FACTUAL AND PROCEDURAL BACKGROUND**

Double H's complaint revolved around masonry work it completed at the Pine Ridge Justice Center in Pine Ridge, South Dakota. (Docket 1 at pp. 2-3). Milender White solicited subcontractor bids for the masonry work and Double H submitted a bid Milender White accepted. Id. MWCC obtained a payment bond from Liberty for the Pine Ridge Justice Center project. Id. at p. 3; (Docket 1-1). "The general purpose of the payment bond was to guarantee that Milender White would pay its subcontractors all amounts due and owing for labor and materials." (Docket 132 at p. 2). Based on the payment bond, Double H sought to hold Liberty liable for work it completed without compensation. (Docket 1 at pp. 24-26).

Later in the case, Double H filed an amended complaint that dropped Lockton as a defendant and added two causes of action. (Docket 29 at pp. 30-35). Double H then filed a second amended complaint pursuing two causes of action.[2] (Docket 61 at pp. 25-30). Liberty moved to dismiss Double H's second claim, and the court denied in part and granted in part Liberty's motion. (Docket 132 at p. 1).

Liberty filed a third-party complaint against MWCC. (Docket 112). When MWCC obtained the payment bond, it entered into a General Agreement of Indemnity ("GAI") with Liberty. (Dockets 112 at pp. 4-5 & 112-2). Once Double

---

[2]The factual allegations in each complaint remained consistent.

H filed suit against Liberty, Liberty "made multiple demands on [MWCC] to place Liberty in sufficient funds to indemnify Liberty for its actual and anticipated losses and for cooperation with Liberty's investigation into the claims." (Docket 112 at p. 6). Liberty filed its third-party complaint because MWCC did not comply with Liberty's demands. Id. The third-party complaint consists of five claims: breach of express contract, common law indemnification, specific performance, *quia timet* rights and unjust enrichment.[3] Id. at pp. 6-12. MWCC filed a joint answer. (Docket 134).

Soon after MWCC filed its answer, the United States Magistrate Judge mediated the claims between Double H and Liberty. (Dockets 159 & 167). Double H and Liberty stipulated to the dismissal of Double H from this dispute, and the court granted dismissal. (Dockets 176 & 177). The court realigned the parties so the case caption labels Liberty as plaintiff and each entity of MWCC as defendants. (Docket 185 at p. 2). Following Double H's exit from the dispute, Liberty and MWCC filed motions for summary judgment against each other. (Dockets 168 & 169). MWCC also filed a motion to transfer the case to the United States District Court for the District of Colorado. (Docket 174).

**ANALYSIS**

**I. Motion to transfer**

Pursuant to 28 U.S.C. § 1404(a), MWCC moves to transfer its dispute with Liberty to the United States District Court for the District of Colorado. (Docket

---

[3]Liberty's common law indemnification claim targets Milender White only. Id. at p. 7. The other claims in Liberty's third-party complaint are against MWCC collectively. Id. at pp. 6-12.

3

174). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."

### a. Liberty's forum selection clause argument

Liberty argues MWCC's motion is not proper because the parties' GAI includes a forum selection clause that bars MWCC's motion to transfer. (Docket 181 at pp. 5-6). Liberty asserts this provision is an enforceable forum selection clause:

> As to any legal action or proceeding related to this Agreement, the Indemnitors and Principals consent to the general jurisdiction of any local, state or Federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States or its territories in which any claim may be brought against the Surety under any Bonds, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis. Indemnitors and Principals further waive personal service or any and all process.

(Docket 112-2 at p. 4).

A forum selection clause is prima facie valid and enforceable unless it is (1) unreasonable and unjust, (2) the result of fraud or overreaching, or (3) enforcing it goes against a strong public policy in the forum state. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). MWCC does not show the forum selection clause is unenforceable for any of these reasons, so the court finds it is enforceable. Id.

Forum selection clauses are mandatory or permissive. See Dunne v. Libbra, 330 F.3d 1062, 1063 (8th Cir. 2003). The United States District Court for the Northern District of Iowa recently explained the difference:

> "Mandatory forum-selection clauses require a case to be brought in an identified venue based on specific language indicating the parties' intent to make jurisdiction exclusive." High Plains Const., Inc. v. Gay, 831 F. Supp. 2d 1089, 1102 (S.D. Iowa 2011) (internal citations and quotation marks omitted); see Datacard Corp. v. Softek, Inc., 645 F. Supp. 2d 722, 729 (D. Minn. 2007); Florida State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc., 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003). "Permissive forum-selection clauses, on the other hand, constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." High Plains Const., Inc., 831 F. Supp. 2d at 1102; see Datacard Corp., 645 F. Supp. 2d at 729; Florida State Bd. of Admin., 262 F. Supp. 2d at 1009.

Jet Co., Inc. v. Thor Indus., Inc., No. C16-3005, 2016 WL 1642663, at *3 (N.D. Iowa Apr. 25, 2016). In this case, the forum provision in the GAI is permissive because it amounts to no more than "consent to jurisdiction," id., in a "local, state or Federal court of the United States or its territories . . . ." (Docket 112-2 at p. 4). This forum selection clause is "an affirmative conferral of personal jurisdiction by consent, and not a negative exclusion of jurisdiction in other courts." Autoridad de Energia Electrica de Puerto Rico v. Ericsson Inc., 201 F.3d 15, 18-19 (1st Cir. 2000). Because the GAI's forum selection clause is permissive, it does not exclude any court from exercising jurisdiction over this dispute between Liberty and MWCC. See Dunne, 330 F.3d at 1063.

The question becomes whether the portion of the forum selection clause stating MWCC "waive[s] any claim or defense . . . based on . . . improper venue

5

. . . ." precludes MWCC's motion to transfer the case. (Docket 112-2 at p. 4). The court need not resolve this issue because it has authority to transfer the case under section 1404(a) whether or not a party makes a motion. Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 972 (8th Cir. 2012) ("There is authority supporting the district court's ability to sua sponte transfer a case under § 1404(a)."); see I-T-E Circuit Breaker Co. v. Becker, 343 F.2d 361, 363 (8th Cir. 1965) (per curium) ("[S]ubsection (a) of § 1404 is without any limiting language as to the power of the district court to transfer a civil action to another district such as is contained in subsection (b) . . . ."). The parties fully briefed the issue of transfer and the court has sufficient information to resolve it. See Americananglian Envtl. Techs., L.P. v. Doherty, 461 F. Supp. 2d 359, 363 (E.D. Pa. 2006) (finding the court could sua sponte resolve transfer under section 1404(a) because it had "sufficient information to raise and decide the question[]"); St. Croix Fed'n of Teachers v. Gov't of the Virgin Islands, No. 1:11-CV-68, 2011 WL 3100566, at *2 (D.V.I. July 25, 2011) (same).

Because the parties' forum selection clause does not exclude the jurisdiction of any court, and it does not matter whether MWCC waived an improper venue defense, the court turns to whether it should transfer the case pursuant to section 1404(a).

    **b. Section 1404(a)**

As stated earlier, section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought . . . ." The court finds section 1404(a) applies to this case because this action "might have been brought" in the District of Colorado. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b). Liberty's claims against MWCC connect to decisions MWCC made in Colorado. Liberty itself asserts MWCC is "based in Denver and presumably made the decision to deny Liberty's indemnity demand while sitting in [its] Denver office." (Docket 181 at p. 7). Because MWCC's rejection of Liberty's indemnity demand is the root of this dispute and the conduct surrounding that rejection occurred in Colorado, this case might have been brought in the District of Colorado.[4]

In determining whether "the interests of justice" are promoted by transfer, the court may consider factors such as: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 696 (8th Cir. 1997). To evaluate the "balance of convenience" the court should

---

[4]Each entity comprising MWCC is located in Colorado. (Docket 112 at p. 2). Liberty's principal office is in Massachusetts. Id. The United States District Court for the District of Colorado would have diversity jurisdiction because Liberty and MWCC are diverse parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; (Docket 112 at pp. 2-3, 11).

7

consider factors such as: "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."  Id.  Because the "interests of justice" and "balance of convenience" factors overlap, the court will address the factors in a combined analysis.

In a 2013 decision, the United States Supreme Court held section 1404(a) transfer analysis changes when the case presents an enforceable forum selection clause.  Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 581-83 (2013).  In contrast to this case, Atlantic Marine involved a mandatory forum selection clause.  See id.  On whether Atlantic Marine applies to permissive forum selection clauses, the "vast majority of district courts deciding this issue have rejected *Atlantic Marine's* application to permissive forum selection clauses."  Waste Mgmt. of La. v. Jefferson Parish ex rel. Jefferson Parish Council, 594 Fed. Appx. 820, 821 (5th Cir. Nov. 28 2014) (per curium) (unpublished) (citing Fin. Cas. & Sur., Inc. v. Parker, Civil Action No. H-14-0360, 2014 WL 2515136, at *3 (S.D. Tex. June 4, 2014) (collecting cases)). "So has the only court of appeals that has considered the issue."  Id. at 821-22 (citing GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1029-30 (11th Cir. 2014) (remanding case for determination on whether the contract "contains

8

a mandatory forum-selection clause" that would implicate Atlantic Marine)). Because the forum selection clause in this case is permissive, the section 1404(a) analysis does not change in the way Atlantic Marine dictates. RELCO Locomotives, Inc. v. AllRail, Inc., 4 F. Supp. 3d 1073, 1085 (S.D. Iowa 2014) ("Because *Atlantic Marine's* discussion of forum-selection clauses describes those where 'a plaintiff agrees by contract to bring suit *only* in a specified forum,' the Court finds that the opinion contemplated only mandatory forum-selection clauses when assessing their effect on *forum non conveniens* [or section 1404(a)] analysis.") (emphasis in original) (quoting Atl. Marine, 134 S. Ct. at 582); see Jet Co., 2016 WL 1642663, at *3 (collecting cases).

Before turning to the applicable factors, the court notes the unique procedural posture of this case. Double H, the original plaintiff, is no longer a party to this action. (Docket 177). Pertinent to this fact, the court is "not required to confine its venue consideration to the facts as they existed at the time of the complaint." In re Fine Paper Antitrust Litig., 685 F.2d 810, 819 (3d Cir. 1982); see Lasalle Bank N.A. v. Mobile Hotel Props., LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. Aug. 1, 2003) (citing In re Fine Paper for this proposition); Qurio Holdings, Inc. v. DISH Network Corp., No. 15-cv-00930, 2015 WL 4148962, at *4 (N.D. Cal. July 9, 2015) (same). This is important because "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." In re Apple, Inc., 602 F.3d 909, 913 (8th

Cir. 2010) (citing Terra, 119 F.3d at 695) (internal quotation marks omitted). While MWCC still shoulders the burden of proving transfer is warranted, the burden is not as "heavy" as it is when a plaintiff resists transfer from a forum it chose.5  See Austin v. Nestle USA, Inc., 677 F. Supp. 2d 1134, 1137 (D. Minn. 2009) ("A 'heavy' burden rests with the movant to demonstrate why a case should be transferred. . . . To satisfy that 'heavy' burden, the movant must demonstrate that the relevant factors weigh 'strongly' in its favor.") (citations omitted); see also Villa v. Salazar, 933 F. Supp. 2d 50, 54 (D.D.C. 2013) ("Generally, a [p]laintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant.") (internal quotation marks omitted).

Based on the parties' briefing and the information before the court, three factors apply to this situation: convenience and cost to the parties, convenience to witnesses and the location of the conduct.

### 1. Convenience and costs to the parties

MWCC argues Colorado is a more convenient venue for the parties. (Docket 175 at p. 6).  MWCC highlights that court proceedings in the District of Colorado would occur in Denver, which "is close to MWCC's principal place of business in Arvada, Colorado."  Id.  Because Liberty is a Massachusetts

---

5Although the court realigned the parties and Liberty is the plaintiff in the case caption, that change does not substantively relate to this analysis because Liberty did not *choose* South Dakota as the venue for this case.

corporation, MWCC argues Liberty "will be no more inconvenienced by litigating in the District of Colorado than it would be by litigating in South Dakota." Id. MWCC asserts Liberty's attorneys "office and practice in Denver, Colorado." Id.

Liberty contends this factor does not weigh in favor of transfer. (Docket 181 at p. 7). Liberty does not address how—as a Massachusetts company—the District of Colorado is less convenient than the District of South Dakota. Liberty indicates its office in Dallas, Texas, handled Double H's claim. Id. at p. 2. Although Liberty's primary attorney offices in Denver and completes his work on this case in that location, Liberty asserts the attorney holds a South Dakota license and Liberty "paid sales taxes on the services rendered." Id. at p. 7.

As Colorado companies, MWCC demonstrates Colorado is more convenient for it than South Dakota. (Docket 175 at p. 6). Liberty fails to show a difference in convenience for it between Colorado and South Dakota. Whether Liberty litigates in Colorado or South Dakota, the situations are similar. If the case was in Colorado, Liberty's primary attorney would not need to travel to South Dakota for court proceedings. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Terra, 119 F.3d at 696-97 (internal quotation marks omitted). Transfer here would be convenient for MWCC and neutral for Liberty.

The court finds this factor weighs in favor of transfer.

## 2. Convenience to witnesses

MWCC asserts this factor favors transfer because "[a] number of witnesses material to MWCC's defense live along the Front Range of Colorado, and they cannot be subpoenaed to testify live at a trial in South Dakota since they do not reside in South Dakota or within 100 miles of the location of the trial." (Docket 175 at p. 6). MWCC claims any "relevant testimony will revolve around formation of the [GAI] between MWCC and Liberty." (Docket 184 at p. 5). On that point, MWCC asserts "[a]ll MWCC witnesses are located in Colorado. No Liberty witnesses are located in South Dakota." Id.

Liberty disagrees, arguing it "will call representatives of Double H and their attorneys (all who live and work in Rapid City) to explain the nature and basis of the Double H claim and the fees Liberty was incurring." (Docket 181 at p. 7). Liberty contends it will call the arbiter who presided over Double H and Milender White's arbitration[6] and a South Dakota expert for testimony on "the reasonableness and necessity of Liberty's fees and costs." Id. According to Liberty, Colorado is not more convenient for its witnesses who would travel from Dallas. Id. Liberty states its inability to call these witnesses for trial in Colorado weighs against transfer. Id.

"When examining the convenience of witnesses, the Court examines the materiality and importance of anticipated witness testimony and determines the

---

[6]During the lifespan of this case, Double H and Milender White arbitrated claims Double H brought. (Docket 168 at pp. 4-5).

12

witnesses' accessibility and convenience to the forum." Aqua-Care Mktg. LLC. v. Hydro Sys., Inc., 99 F. Supp. 3d 959, 964 (S.D. Iowa 2015). "This factor, however, should not be determined solely upon a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts; the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." Hammann v. 1-800 Ideas.com, Inc., 455 F. Supp. 2d 942, 962 (D. Minn. 2006) (internal quotation marks omitted).

The circumstances surrounding the parties' GAI and the alleged damages Liberty amassed are material and important to this case, and both MWCC and Liberty indicate they have witnesses with testimony on those matters. See Aqua-Care, 99 F. Supp. 3d at 964. For MWCC, all of those witnesses are in Colorado. (Docket 184 at p. 5). And for Liberty, those witnesses are in in South Dakota and Texas. (Docket 181 at p. 7). If the court requires MWCC's Colorado witnesses to travel to South Dakota, MWCC "would likely incur expenses for airfare, meals, and lodging, and losses in productivity from time spent away from work." In re Apple, 602 F.3d at 913. "In addition, [MWCC's] witnesses will suffer the 'personal costs associated with being away from work, family, and community.'" Id. at 913-14 (quoting In re Volkswagen of Am., Inc., 545 F.3d 304, 317 (5th Cir. 2008)). "These costs would be significantly minimized or avoided by transfer to [Colorado]." Id. at 914. As for Liberty, with witnesses in South Dakota and Texas, the current venue is more convenient, but

it does not "significantly minimize[]" costs compared to calling witnesses in Colorado. See id. Although MWCC could do more to "clearly specify the essential witnesses[,]" it generally shows the inconvenience the witnesses would face with this dispute in South Dakota. See Hammann, 455 F. Supp. 2d at 962.

The court finds this factor weighs in favor of transfer.

### 3. Location of conduct

MWCC argues the conduct prompting this dispute with Liberty occurred in Colorado. (Docket 175 at p. 5). MWCC states "Liberty's claims against MWCC turn on the interpretation of the [GAI], which was made in Colorado at MWCC's principal place of business." Id. MWCC believes its "purported breach of the GAI would have occurred in Colorado, where MWCC maintains its principal place of business." Id. In response, Liberty claims the "only true tie to Colorado is that [MWCC is] based in Denver and presumably made the decision to deny Liberty's indemnity demand while sitting in [its] Denver office." (Docket 181 at p. 7).

The United States District Court for the District of Minnesota recently ruled on a section 1404(a) transfer motion in a case that had a similarly unique procedural posture and some comparable facts. Matter of Trusts, Civil No. 16-2487, 2017 WL 991044, at *16 (D. Minn. Mar. 14, 2017).[7] In that case, two

---

[7]The full case name is: Matter of Trusts established under the Pooling & Servicing Agreements relating to the Wachovia Bank Commercial Mortgage Tr. Commercial Mortgage Pass-Through Certificates, Series 2007-C30.

14

parties—neither of whom were a plaintiff—battled over transfer and a written agreement was at the center of the parties' dispute. Id. at *1-4, 13-14, 16. The court held it would examine "the location where the governing agreement was negotiated and drafted as well as where the underlying conduct precipitating the [lawsuit] took place." Id. at *16.

Because the court is "not required to confine its venue consideration to the facts as they existed at the time of the complaint[,]" determining the central issues in this case requires focusing on MWCC and Liberty, not Double H. In re Fine Paper, 685 F.2d at 819. The core dispute between MWCC and Liberty turns on the GAI they formed. They entered into the GAI in Colorado, and MWCC's alleged breach of the GAI—its rejection of Liberty's indemnity demand—occurred in Colorado. (Docket 175 at p. 5); see Matter of Trusts, 2017 WL 991044, at *16.

In stating the "only true tie to Colorado is that [MWCC is] based in Denver and presumably made the decision to deny Liberty's indemnity demand while sitting in [its] Denver office[,]" Liberty suggests this fact is not significant. (Docket 181 at p. 7). But it is. In the case In re Apple, a company's alleged wrongdoings in business "originated from [its] . . . headquarters, where many of [its] attorneys with a role in enforcing intellectual property rights are located." In re Apple, 602 F.3d at 914. Accordingly, if that company "did carry out a plan to harm [another company's] business interests," it took place at the headquarters. Id. The court found those facts supported transferring the case

15

to the jurisdiction where the headquarters was located because that is where the conduct underlying the dispute occurred.  Id.  This case is similar because MWCC's conduct that Liberty believes entitles it to a remedy is MWCC's decision—made in Colorado—not to comply with Liberty's indemnity demand.

The court finds this factor weighs in favor of transfer.

Because the applicable factors weigh in favor of transfer, the court finds transfer to the United States District Court for the District of Colorado is proper under 28 U.S.C. § 1404(a).

**ORDER**

Based on the above analysis, it is

ORDERED that MWCC's motion (Docket 174) is granted and the case is transferred to the United States District Court for the District of Colorado.

Dated August 29, 2017.

<div style="margin-left: 40%;">
BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE
</div>